**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

OSCAR NUNEZ,

     Plaintiff - Appellant,

v.

LIFETIME PRODUCTS, INC.,

     Defendant - Appellee.

No. 17-4080
(D.C. No. 1:14-CV-00025-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

    Oscar Nunez, proceeding pro se, appeals the district court's grant of summary judgment to Lifetime Products, Inc. (Lifetime), his former employer. He alleged that Lifetime violated his rights under the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Family and Medical Leave Act (FMLA). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Mr. Nunez worked for Lifetime from August 1, 2002, until August 8, 2011, when Lifetime terminated his employment due to his numerous conflicts with other employees and superiors, repeated failures to comply with company policies and procedures, and refusal to accept criticism without arguing. As the district court noted, "Lifetime demonstrate[d] that Nunez received several 'Attendance Occurrences' (citations for being absent without permission); he sent negative and degrading emails and was subsequently required to filter all outgoing mail through his supervisor, a requirement he did not always comply with; he was frequently argumentative; and he yelled at coworkers." R. at 951 (footnotes omitted).

Following his termination, Mr. Nunez sued Lifetime. He brought an ADEA discrimination claim, ADA claims for retaliation and failure to accommodate, and FMLA claims for retaliation and interference. A magistrate judge recommended granting Lifetime's motion for summary judgment, which the district court reviewed de novo. The district court then adopted the recommendation.

## II. LEGAL STANDARDS

We review de novo the district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1186 (10th Cir. 2016). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material only if it might affect the outcome of the suit under the governing

2

law.  And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Foster,* 830 F.3d at 1186 (internal quotation marks omitted).

We liberally construe Mr. Nunez's pro se filings.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  We do not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Id.*  Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants."  *Id.* (internal quotation marks omitted).

In reviewing employment-discrimination claims, where, as here, the plaintiff relies on circumstantial rather than direct evidence, we generally employ the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the plaintiff must first establish a prima facie case.  *Foster*, 830 F.3d at 1186.  If the plaintiff does so, the burden of production shifts to the employer to show that "it had a legitimate, nondiscriminatory reason for the adverse action."  *Id.*  If the employer makes this showing, the burden of production is then on the plaintiff to establish pretext, which is a "showing that the proffered nondiscriminatory reason is unworthy of belief."  *Id.* (internal quotation marks omitted).

This framework applies to claims of ADEA discrimination, *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011); ADA retaliation, *Foster*, 830 F.3d at 1186; and FMLA retaliation, *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1229 (10th Cir. 2012).  For ADA failure-to-accommodate claims, we employ a modified

*McDonnell Douglas* analysis, *see Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017), as discussed below.  The *McDonnell Douglas* framework does not apply to FMLA interference claims, but "[a]n employer can defend against the claim . . . by showing that the employee would have been terminated anyway, i.e. regardless of the request for FMLA leave."  *Brown*, 700 F.3d at 1227.

## III.  DISCUSSION

### A.  *Time-Barred ADEA and ADA Claims*

The district court held that Mr. Nunez's ADEA and ADA claims arising before February 2, 2011, were time-barred.  For a claim to be timely, a claimant must file a grievance with the appropriate administrative agency within 300 days after the alleged unlawful actions occurred.  *See Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011) (stating an ADEA claimant must "file[] a grievance with the appropriate administrative agency . . . 'within 300 days after the alleged unlawful practice occurred'" (quoting 29 U.S.C. § 626(d)); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007) (stating that for a "claim under the ADA to be timely, [a claimant] must have filed an administrative charge within 300 days of the challenged employment action;" explaining that 42 U.S.C. § 12117(a) incorporates the administrative filing requirements of 42 U.S.C. 2000e-5(e)(1) & (f)(1)).

Mr. Nunez filed his grievance with the Utah Antidiscrimination and Labor Division on November 29, 2011, so the cut-off for timely claims was 300 days earlier—February 2, 2011.  Although Mr. Nunez pursues claims on appeal that the

4

district court held were time-barred, he has not attempted to demonstrate error in this holding, and we perceive none. We therefore affirm the court's ruling that claims arising before February 2, 2011, are time-barred.

B. *ADA Accommodation Claim*

We turn to Mr. Nunez's ADA accommodation claim. Under the applicable modified burden-shifting framework, "the employee must make an initial showing that (1) [he] is disabled; (2) [he] is otherwise qualified; and (3) [he] requested a plausibly reasonable accommodation." *Punt*, 862 F.3d at 1050 (internal quotation marks omitted).

We focus on the third element of a prima facie case—whether Mr. Nunez requested a reasonable accommodation for a disability. "[B]efore an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). Even though "the notice or request does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' it nonetheless must make clear that the employee wants assistance *for his or her disability.*" *Id.* (internal quotation marks omitted). The notice must make the employer aware "of both the disability and the employee's desire for accommodations for that disability." *Id.* (internal quotation marks omitted).

Mr. Nunez asserts that he orally requested an accommodation on May 9, 2011, to sit for five minutes per hour. He relies on an email exchange with his supervisor

5

referring to a conversation about Mr. Nunez sitting "due to [his] back." R. at 511. The supervisor informed Mr. Nunez that he would not be permitted to sit while performing his job. Mr. Nunez responded with a lengthy argument—unrelated to his back—about why sitting would allow him to better perform the job, explaining that his request to sit was primarily to improve production efficiency. He further stated, "My back is a secondary issue like I've explained to you today." *Id.* Rather than point to a particular back problem or tie his request to a disability, he based his request on improving comfort and productivity.

This evidence was insufficient to inform the supervisor that Mr. Nunez had a back disability that required sitting while working. His discussion of job efficiency from sitting while working, coupled with a vague reference to his back, did not "make clear that the employee want[ed] assistance *for his or her disability*." *C.R. England, Inc.*, 644 F.3d at 1049; *see Dinse v. Carlisle Foodservice Prod. Inc.*, 541 Fed. App'x 885, 892 (10th Cir. 2013) (holding employee's request for a laptop computer so he could return to work more quickly after surgery failed to provide legally adequate notice to his employer that he wanted a laptop to accommodate the mental fatigue caused by his disability); *Garcia v. Cintas Corp. No. 3*, 601 Fed. Appx. 531, 531 (9th Cir. 2015) (holding general complaint of pain was insufficient to give notice of a need for an accommodation under state law requiring accommodation for a disability); *Angel v. Lisbon Valley Mining Co. LLC*, No. 2:14-CV-00733 BSJ, 2015 WL 7454522, at *4 (D. Utah Nov. 23, 2015) ("[E]ven if [employee] said he was taking the oxycodone for back pain, such a statement is not

6

enough to give notice to [the employer] that he claimed to have a disability."). Accordingly, Mr. Nunez failed to meet his burden to show that he adequately requested a plausibly reasonable accommodation, and summary judgment in Lifetime's favor was appropriate.

C. *ADA Discrimination, ADA Retaliation, FMLA Retaliation—No Pretext Showing*

For Mr. Nunez's remaining claims, we assume without deciding that he satisfied his initial burden to establish the requisite prima facie showings. Under the *McDonnell Douglas* framework, the burden shifted to Lifetime to show that Mr. Nunez was fired for legitimate, nondiscriminatory reasons. Lifetime did so by adducing evidence that it terminated Mr. Nunez's employment due to numerous conflicts with other employees and superiors, repeated failures to comply with company policies and procedures, refusal to accept criticism without arguing, being absent without permission, and sending negative and degrading emails and disregarding instructions to filter all outgoing mail through his supervisor. Lifetime thus met its burden to show that Mr. Nunez was fired for reasons other than age, disability, or requests for FMLA leave. The burden then shifted back to Mr. Nunez to demonstrate pretext, which he has failed to do.

"The plaintiff may establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the

7

asserted non-discriminatory reasons." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (internal quotation marks omitted).

In an attempt to show pretext, Mr. Nunez contends that Lifetime's evidence refuting his claim that he was terminated in retaliation for requesting ADA accommodations on August 3, 2011, was fabricated. This evidence consisted of declarations by the decisionmakers stating that they decided to terminate Mr. Nunez at a meeting held on July 29, so his August 3 request could not have been a reason for the termination. Mr. Nunez maintains that the declarations were fabricated because there is no record of a July 29 meeting in Lifetime's electronic records. He has not, however, pointed to any company policy or other basis calling for a record of the meeting to be included in Lifetime's electronic records. Moreover, Mr. Nunez's personal belief that the declarations are untrue "is insufficient to create a genuine issue of material fact," *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

Mr. Nunez also challenges one of the reasons he was fired—sending negative and degrading emails and not filtering his emails through his supervisor as instructed—by asserting that Lifetime policy WP-6093 required him to send emails. But the policy's directive to "email the supervisor a daily shift report," R. at 616, did not authorize him to send negative and degrading emails, nor did it authorize him to send email to anyone other than his supervisor.

Mr. Nunez's remaining arguments are not germane to pretext because they do not suggest the reasons for firing him were not the true reasons. For example, he alleges the company nurse violated his medical-privacy rights and Lifetime failed to

investigate the incident. He also alleges his supervisor warned him about taking unauthorized overtime even though the supervisor was aware of his work hours on a daily basis and that he was doing both his and his coworker's job. These examples and Mr. Nunez's other proffered evidence of pretext do not challenge the reasons he was fired. He has not raised a triable issue of fact as to whether Lifetime's reasons were pretextual.[1] Thus, the district court correctly granted summary judgment to Lifetime.

D. *FMLA Interference*

Although pretext is not part of the analysis for an FMLA interference claim, an employer can prevail by showing that it would have terminated the employee regardless of any request for FMLA leave. *See Brown*, 700 F.3d at 1227. As discussed above, Mr. Nunez has failed to adduce evidence to suggest that the stated reasons for termination were not the real ones. *See id.* at 1228. Therefore, summary judgment on this claim was appropriate.

E. *Evidentiary Hearing*

Mr. Nunez also complains that the district court did not hold an evidentiary hearing. We find no error in the district court's decision to grant the summary-judgment motion without holding an evidentiary hearing because it is clear that the

---

[1] Mr. Nunez's "Addenda Appellant's [R]eply" relies on a newspaper article reporting that the Utah Antidiscrimination and Labor Division rarely rules in favor of employees. Mr. Nunez claims this "legal fact" is relevant, apparently suggesting that the agency should have ruled in his favor. But the newspaper article does not address any of the issues in his case.

9

motion could be resolved on the written record. *See Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.").

## IV. CONCLUSION

We have reviewed the parties' briefs, the district court's order, and the applicable law. The consistent thread throughout is that the reasons for discharging Mr. Nunez had nothing to do with his age, disability, or need for FMLA leave. As we have observed, Mr. Nunez has produced no evidence of pretext. Rather, he takes issue with Lifetime's determination that his conduct warranted termination. But "our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Dalpiaz v. Carbon Cty.*, 760 F.3d 1126, 1133 (10th Cir. 2014) (brackets and internal quotation marks omitted).

We affirm the grant of summary judgment in favor of Lifetime.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

10